Argued and submitted December 3, 1997, reversed and remanded on appeal; remanded on cross-appeal with instructions November 4, 1998, respondent - cross-appellant's petition for reconsideration filed November 18, and respondent JC Northwest's petition for reconsideration filed November 18, allowed by opinion March 24, 1999

See 159 Or App 328, _____ P2d _____ (1999)

## PLATT ELECTRIC SUPPLY, INC.,
### *Respondent-Cross-Appellant,*

*v.*

## JC NORTHWEST, INC.,
### dba Adolf's Electric,
### and Cole Chaney, Inc.,
### *Respondents,*

*and*

## POLK COUNTY HOUSING AUTHORITY,
### *Appellant-Cross-Respondent.*

### (96P-1093; CA A95274)

967 P2d 924

Mark B. Comstock argued the cause for appellant-cross-respondent. With him on the briefs was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Frederick A. Batson argued the cause for respondent-cross-appellant. With him on the briefs were Laura T. Z. Montgomery and Gleaves Swearingen Larsen Potter Scott & Smith LLP.

George Kelly argued the cause and filed the brief for respondent JC Northwest, Inc., dba Adolf's Electric.

No appearance for respondent Cole Chaney, Inc.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.**

LANDAU, P. J.

Deits, C. J., dissenting.

---

\* Deits, C. J., *vice* Leeson, J., resigned.

\*\* Wollheim, J., *vice* Riggs, J., resigned.

**LANDAU, P. J.**

The principal issue in this case is the extent to which defendant Polk County Housing Authority (PCHA) is liable to subcontractors when the general contractor failed to pay for work performed on a public housing project. Plaintiff Platt Electric Supply, Inc. (Platt) and defendant - cross-claim-plaintiff JC Northwest, Inc., dba Adolf's Electric (Adolf's), both subcontractors, contend that PCHA is liable under various public contracting statutes because it failed to obtain a bond from the general contractor to ensure that they would be paid. The trial court agreed, entered judgment against PCHA and awarded Platt attorney fees. PCHA appeals. Platt cross-appeals the award of attorney fees, arguing that the trial court should have awarded a larger amount. We reverse and remand on the appeal, which disposition renders the cross-appeal moot.

The relevant facts are not in dispute. In October 1993, PCHA solicited bids for construction of a public housing project in Independence. To take advantage of certain tax credit available through the Farmworker Housing Tax Credit Program, PCHA needed to secure completion of the project by the end of 1995. The solicitation did not attract any bids from contractors who were financially able to furnish performance bonds ordinarily required for public improvement projects. ORS 279.029(4)(b). PCHA determined that it did not have time to rebid the project without putting at risk the availability of the desired tax credits. As permitted by statute, ORS 297.029(5), it declared an emergency for the express purpose of excusing performance of the bond requirement and then awarded the contract to Cole Chaney, Inc. (Chaney), without the requirement that Chaney post a performance bond.

Chaney subcontracted the electrical work on the project to Adolf's, which, in turn, contracted with Platt for certain equipment and supplies. After work on the project was partially performed, Chaney defaulted on its payments to its subcontractors, including Adolf's and Platt, and was unable to complete construction.

Platt initiated this action against Adolf's, Chaney and PCHA. Adolf's cross-claimed against Chaney and PCHA. Pertinent to the appeal are the claims against PCHA. Platt alleged two claims against PCHA. First, it alleged that PCHA is liable under ORS 279.542 for failing or neglecting to require Chaney to obtain a performance bond. Second, in the alternative, it alleged a right to recovery on a theory of unjust enrichment. Adolf's claim against PCHA also is predicated on ORS 279.542.

Platt moved for summary judgment on its statutory claim against PCHA. The trial court granted the motion. Adolf's then moved for summary judgment on its statutory claim, and the trial court granted that motion. The trial court entered a final judgment in favor of Platt "on all of [Platt's] claims against all Defendants." The court also entered judgment in favor of Adolf's against PCHA. Following the entry of judgment, Platt and Adolf's petitioned for an award of attorney fees. The trial court awarded Platt a portion of its fee request and awarded Adolf's the full amount requested. The court entered supplemental judgments on the fee awards.

On appeal, PCHA first challenges the trial court's entry of summary judgment on the statutory claims asserted by Platt and Adolf's. PCHA argues that it is not liable under ORS 279.542, because that statute applies only to a "public contracting agency" that fails or neglects to obtain a performance bond when one is otherwise required. According to PCHA, it is not a "public contracting agency" within the meaning of the statute. Platt and Adolf's both argue that ORS 279.542 applies, because PCHA is a "public contracting agency" and because it did fail or neglect to obtain a bond that otherwise was required under ORS 279.029.

Resolution of the dispute depends on the proper interpretation of the relevant statutes, which we determine in accordance with the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text in context and, if necessary, also examine the legislative history and other aids to construction. *Id.*

ORS 279.029 describes the process by which a public contracting agency may award a contract for a public

improvement. Among other things, the statute requires that, when the contract is for a public improvement, the successful bidder must

> "execute and deliver to the public contracting agency a good and sufficient bond, to be approved by the public contracting agency, in a sum equal to the contract price for the faithful performance of the contract. In lieu of a surety bond, the public contracting agency may permit the successful bidder to submit a cashier's check or certified check in an amount equal to 100 percent of the contract price."

ORS 279.029(4)(b). The same statute also provides an exception from the obligation to provide a performance bond:

> "In cases of emergency, or where the interest or property of the public contracting agency probably would suffer material injury by delay or other cause, the requirement of furnishing a good and sufficient bond for the faithful performance of any public contract may be excused, if a declaration of such emergency is made and concurred in by all members of the governing board of the public contracting agency."

ORS 279.029(5). ORS 279.542 then describes the consequences to the public contracting agency of failing or neglecting to require a bond when one is otherwise required:

> "If the contract is one for which a bond, cashier's check or certified check as provided for in ORS 279.029 is required and the contractor fails to pay for labor or materials * * * and the officers of the public body which let the contract fail or neglect to require the person entering into the contract to execute the bond, cashier's check or certified check:
>
> "* * * * *
>
> "(2)   The public body and the officers authorizing the contract shall be jointly liable for the labor and materials used in the prosecution of any work under the contract * * *."

Platt and Adolf's base their claims on ORS 279.542. By its terms, the statute imposes liability on a public body and its officers only if (1) the contract was one for which a bond was required; (2) the contractor failed to pay for labor and materials; and (3) the public contracting agency failed or

neglected to require the contractor to obtain a bond as provided in ORS 279.029. Platt and Adolf's contend that each of those requirements has been demonstrated in this case. According to PCHA, ORS 279.542 applies only when a bond is required under ORS 279.029, and ORS 279.029 applies only to "public contracting agencies." PCHA contends that, because it is not a "public contracting agency" within the meaning of ORS 279.029, this is not a case in which a bond is required. The parties then set about briefing at length and in detail the question whether PCHA is indeed a "public contracting agency" within the meaning of ORS 279.029. Both parties appear to assume that, if PCHA is a public contracting agency within the meaning of the statute, its contract with Chaney is one for which a bond was required, and PCHA is liable under ORS 279.542.

■       We need not address the parties' arguments on that point, however. Even if PCHA is a public contracting agency within the meaning of the statute, its contract with Chaney still was not one for which a bond was required under ORS 279.029 for a very simple reason: In accordance with ORS 279.029(5), PCHA declared an emergency, which the statute itself declares has the effect of excusing the public body from the bond requirement. In other words, bonds are not required for emergency contracts.

■       Other language in ORS 279.542 compels the same conclusion. The statute imposes liability on public bodies only if they "fail or neglect" to require a contractor to post a bond when one is required. The language evinces an intention to impose liability only when public bodies do not act when they otherwise have an obligation to act. In this case, PCHA affirmatively declared an emergency for the express purpose of excusing the performance bond requirements. In so doing, it did not "fail or neglect" to do anything that the law otherwise requires. To the contrary, it took action that the law explicitly allows.

■       We acknowledge that none of the parties made the foregoing arguments about the proper construction of ORS 279.542. The arguments that they do raise, however, require us to interpret and apply ORS 279.542 generally. Indeed, their arguments require us more particularly to interpret

and apply the meaning of the phrase "[i]f the contract is one for which a bond \* \* \* is required." Merely because both parties propose incorrect interpretations of the statute does not mean that we are bound to choose between the incorrect proposals. We cannot be painted into an interpretive corner by the arguments of the parties. *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 957 P2d 720 (1998) ("[p]arties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law"); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). We therefore conclude that Platt and Adolf's were not entitled to judgment under ORS 279.542 as a matter of law and that the trial court erred in entering summary judgment on the statutory claims against PCHA.

PCHA next argues that the trial court erred in entering judgment "on all of [Platt's] claims against all Defendants." PCHA contends that it was improper to enter summary judgment on *all* claims, because the parties' motions were directed at the statutory claims only. The claim for unjust enrichment was not the subject of the motions. Platt contends that the issue is "insignificant or moot," because the trial court correctly entered summary judgment on the statutory claims; Platt offers no argument that it was appropriate to enter judgment on a claim that was not the subject of the parties' summary judgment motions. Adolf's does not respond to PCHA's argument. In light of the fact that we conclude that the trial court erred in entering summary judgment on the statutory claims, the trial court's entry of judgment on the unjust enrichment claim was neither insignificant nor moot but, rather, error.

Finally, Platt asserts on cross-appeal that the trial court erred in failing to award it the full amount of the attorney fees that it requested. Given our disposition of the appeal, Platt was entitled to no fees, and the supplemental judgment awarding fees must be vacated.

Reversed and remanded on appeal; remanded on cross-appeal with instructions to vacate the supplemental judgment awarding attorney fees.

**DEITS, C. J.,** dissenting.

Polk County Housing Authority (PCHA) argues (incorrectly, in my view) that it is not a "public contracting agency" under ORS 279.029 and that the contract is therefore not one for which a bond is required for purposes of ORS 279.542. Platt and Adolf's agree that that is the relevant question but argue for the opposite answer. Instead of addressing that question, however, the majority decides the appeal on a completely different ground that no party raised in either the trial court or here. The basis of the majority's decision is that, under ORS 279.029(5), "bonds are not required for emergency contracts" like the one involved in this case. 157 Or App at 85.

The majority explains:

"We acknowledge that none of the parties made the foregoing arguments about the proper construction of ORS 279.542. The arguments that they do raise, however, require us to interpret and apply ORS 279.542 generally. Indeed, their arguments require us more particularly to interpret and apply the meaning of the phrase '[i]f the contract is one for which a bond * * * is required.' Merely because both parties propose incorrect interpretations of the statute does not mean that we are bound to choose between the incorrect proposals. We cannot be painted into an interpretive corner by the arguments of the parties. *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997)."

157 Or App at 85-86.

The foregoing statement by the majority, and its dispositional reliance on ORS 279.029(5), seem to me to blur and merge two distinct concepts into one. The first is that the parties' mutually incorrect arguments about the meaning of a statute cannot force a court to choose one of the incorrect interpretations as its own, or to give precedential force to an erroneous interpretation. That concept is correct. The second is that, if the parties present *any* arguments about a statute, erroneous or not, the court may or must take upon itself the responsibility "to interpret and apply" the whole statute,

independently of the parties' arguments, and to award victory to whichever party fares better under the court's interpretation, without regard for whether the party has argued anything that resembles what the court has said. In my view, that concept is a mistaken one.

The two concepts are not simply different sides of one coin that are necessarily or inherently intertwined in their operation. To the contrary, the protection of a court's precedential and interpretive integrity is perfectly compatible with the preservation of its neutrality. As we explained in *PacifiCorp v. City of Ashland*, 89 Or App 366, 370, 749 P2d 1189, *rev den* 305 Or 594 (1988):

> "Although it is correct that courts should not make the parties' arguments for them, it is equally correct that the parties cannot compel a court to misconstrue a statute by arguing only incorrect interpretations of it. The balance between those principles is not always easy to strike. The appropriate answer might sometimes be that a party which would benefit from a statute if it were correctly construed, but which does not urge that construction, is not entitled to prevail."

In other words, a court may reject both parties' incorrect arguments about a statute's meaning without proceeding to hold that one party or the other "wins" under the correct argument that it has not made.

In the passage that I have quoted from its opinion, the majority cites two recent Supreme Court decisions as authority for its position. However, I do not agree with the majority's understanding of them. In *Stull*, the court said two things before addressing the merits of the unraised "alternate" argument. It first noted:

> "We find that the issue was preserved sufficiently under the standards set out in *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), because plaintiff raised and preserved the broader legal issue—whether the trial court erred in holding that his claims were barred by the statute of limitations. Under the rationale in *Hitz*, a specific alternate argument regarding that issue can be raised for the first time in this court."

*Id.* at 77. However, the court then said in the next paragraph of its opinion:

> "[T]he question is one of statutory interpretation. In con-
> struing a statute, this court is responsible for identifying
> the correct interpretation, whether or not asserted by the
> parties."

*Id.* The court's first statement, with its reliance on *Hitz*, would appear to be sufficient justification for its reaching the unraised argument without any need for the second. *Hitz* was concerned with the sufficiency of the *preservation* for an argument on appeal, not with a failure like the one here to *make* an argument on appeal. Correspondingly, it is unclear whether the second statement was meant as a supplemental rationale for reaching the argument or was meant solely as an iteration of the court's jurisprudential responsibility not to misconstrue statutes.

In *Miller*, the court relied on ORS chapter 554 to decide that the plaintiff was entitled to inspect and copy the defendant district's records although the plaintiff's claim was based on the Public Records Law in ORS chapter 192. The court explained in a footnote:

> "The Court of Appeals noted that ORS chapter 554 'con-
> tains specific provisions granting an individual the right to
> examine the records of an ORS chapter 554 corporation,'
> but took the view that *plaintiff* did not claim entitlement
> under that statute. * * *
>
> "However, the parties may not prevent a court from
> noticing and invoking an applicable statute by relying only
> on other sources of law. Furthermore, defendant expressly
> relied on the availability of relief under ORS 554.120."

*Id.* at 309 n 3. (Emphasis in original.) Again, it is at least open to doubt which one—or both—of two things the court regarded as the justification for deciding the case on a theory that the prevailing party had not raised: The notion that the court is free to look beyond the contentions offered by the parties, or the fact that the provision that became the basis for the decision *was* relied on by *a* party. *See PacifiCorp*, 89 Or App at 370-71.

In my view, it is accordingly unclear from *Stull* and *Miller* whether, independently or in conjunction with other reasons, the duty of the courts not to misinterpret statutes was the reason why the court felt justified in deciding the

case based on issues not raised by the parties. Here, conversely, the majority expressly decides the case on the basis of an unraised issue, and it explains its doing so solely by reference to the court's responsibility not to misinterpret statutes. Moreover, this is not a situation, as in *Stull*, where the principle of *State v. Hitz* can support a decision based on an unraised argument that is subsumed within a broader issue that the parties do raise. The issue that the parties raise—whether PCHA is subject to the bid laws at all—differs in substance and kind from the issue the majority decides—whether the "emergency" exception applies to the contract and obviates the bond requirement. The fact that the two issues arise out of provisions that the legislature has chosen to codify in different parts of the same statute does not make the *issues* the same.

As explained by Justice Durham in his dissent in *Miller*, it violates the fundamental fairness of the litigation process to decide a case on a basis that was not asserted by the parties at trial or on appeal:

> "Plaintiff gave neither lower court a meaningful chance to consider and decide whether defendant had violated any duty imposed on it by ORS 554.120(1). Because rules regarding preservation of error protect the fundamental fairness of litigation as a case advances through the appellate process, we should enforce those rules, not disregard them. *See Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995):
>
>> " '[T]he rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument.' "

*Miller*, 326 Or at 314. *See also J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995).

Because PCHA presents no persuasive basis for reversal, I would affirm the judgment and, therefore, I respectfully dissent.[1]

---

[1] Nothing in this opinion is meant to suggest that there are *never* exceptional occasions on which the courts may and should decide cases on grounds other than those argued by the parties. The point with which I disagree, in this case and in general, is that the courts must *always* base their decisions on arguments the parties do not make in cases that turn on the interpretation of statutes and in which no party relies on the "winning" argument.

In that context, as much as any other, the usual roles of the advocate and the adjudicator should be observed. Insofar as *Stull, Miller,* or the majority opinion in this case are premised on some understanding about the peculiar importance of statutes in our system, I might agree with their *premise*. Nevertheless, the role of the *courts* in our system is to decide cases. The decision of cases sometimes requires the interpretation of statutes; however, the interpretation of statutes is not a goal of the adjudicative process in itself, independently of the decision-making function of which it is sometimes a part.